IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHERIESE D. JOHNSON,<br>    Plaintiff,<br>             v.<br>RELIANCE STANDARD LIFE INS. CO.,<br>    Defendant. | Civil Action No.<br>1:21-cv-02900-SDG |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Cheriese D. Johnson's Motion for Judgment on the Administrative Record [ECF 26] and Defendant Reliance Standard Life Insurance Co.'s (Reliance Standard) Motion for Summary Judgment [ECF 27]. On consideration of the parties' briefing, and with the benefit of oral argument, the Court **DENIES** Plaintiff's motion and **GRANTS** Reliance Standard's.

**I.   Factual Background**

Unless otherwise noted, the facts are either undisputed by the parties or taken from materials contained in the administrative record.[1] Johnson was employed at The William Carter Company.[2] She became eligible for coverage

---

[1] Citations to the administrative record are to the record pagination (AR0001, *et seq.*) rather than the CM/ECF numbering.

[2] ECF 33, ¶ 2.

under its long-term disability insurance plan (the Plan) on October 12, 2016.[3] The Plan was issued by Reliance Standard and is governed by ERISA.[4] Johnson would eventually become totally disabled within the meaning of the Plan and seek long-term disability benefits, which were denied by Reliance Standard.[5]

> The Plan contains a pre-existing conditions exclusion (the Exclusion):
>
>> Benefits will not be paid for a Total Disability:
>>
>> (1) caused by;
>>
>> (2) contributed to by; or
>>
>> (3) resulting from;
>>
>> a Pre-existing Condition unless the Insured has been Actively at Work for one (1) full day following the end of twelve (12) consecutive months from the date he/she became an Insured.[6]

"Pre-existing Condition" is defined as "any Sickness or Injury for which the Insured received medical Treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs or medicines, during the three (3) months immediately prior to the Insured's effective date of insurance."[7]

---

[3] *Id.* ¶¶ 1, 3.

[4] AR0001.

[5] ECF 27-2, ¶¶ 7, 13, 24.

[6] AR0022. Capitalized terms not defined herein have the meaning ascribed to them in the Plan. *See also* ECF 33, ¶ 6.

[7] AR0023. *See also* ECF 33, ¶ 8.

"Sickness," in relevant part, "means illness or disease causing Total Disability which begins while insurance coverage is in effect for the Insured."[8] The three-month period is referred to as the "Look-Back Period."[9]

On December 31, 2015, Johnson first noticed the symptoms that would ultimately lead her to stop working.[10] Although Johnson was seen numerous times by multiple professionals for her symptoms, the Court summarizes only some of those visits. On August 15, 2016, Johnson was evaluated by a medical professional for fatigue, muscle weakness, nausea, and vomiting.[11] She underwent an upper gastrointestinal endoscopy on August 23.[12] On September 6, Johnson was evaluated by a doctor who noted her complaints of nausea/vomiting, nose bleeds, memory loss, body aches, and joint swelling.[13] On September 13, Johnson was seen by a doctor for low blood sugar; the day before that she had been seen for a "syncopal episode."[14] Treatment notes from September 30 identify Johnson's symptoms as "vomiting, skin rash, chest pain, headaches, forgetfulness and

---

[8]   AR0010.

[9]   Reliance Standard refers to this as the "treatment free period." ECF 33, ¶ 8.

[10]  ECF 33, ¶ 5.

[11]  *Id.* ¶ 15.

[12]  *Id.* ¶ 16.

[13]  *Id.* ¶ 17.

[14]  *Id.* ¶ 18.

cognitive impairment, fatigue, inability to control bowels, blurred visions, fever, low blood sugar (54), nausea, loss of appetite, syncope, dizziness, generalized aching, swelling of feet and hands, loss of motor skills and nosebleeds."[15] From July 25 through October 3, 2016, Johnson was prescribed a variety of medications to treat her symptoms.[16] In February 2017, Johnson had a lung resection surgery and was finally diagnosed with scleroderma.[17] Scleroderma is a rare, chronic autoimmune disease "in which normal tissue is replaced with dense, thick fibrous tissue." Symptoms include joint pain and stiffness, persistent cough, shortness of breath, digestive and gastrointestinal problems, and fatigue.[18]

On October 3, 2017, Johnson filed a claim for long-term disability benefits.[19] The parties do not dispute that Johnson has a Total Disability within the meaning of the Plan.[20] Her claim form indicates that she became unable to work as of

---

[15]  ECF 33, ¶ 21.

[16]  *Id.* ¶ 23.

[17]  ECF 33, Response to ¶ 12 & ¶ 25.

[18]  *Id.* ¶ 26.

[19]  AR0131.

[20]  *See generally* ECF 27-2.

January 26, 2017.[21] One of her treating physicians identified her symptoms for purposes of her claim as joint pain, swelling, and shortness of breath.[22]

Because Johnson sought benefits within 12 months of first becoming insured under the Plan, her claim was subject to evaluation under the Exclusion.[23] The applicable Look-Back Period under the Exclusion was from July 12, 2016 through October 12, 2016.[24] Despite having been seen by and received treatment from many doctors and been prescribed numerous medications during this period, Johnson was not diagnosed with scleroderma until after her lung resection surgery in February 2017. This is the crux of the parties' dispute.

Reliance Standard denied Johnson's claim on January 4, 2018, and indicated that, at the time she stopped working, she was suffering from "pain and numbness involving all fo[u]r extremities, joint swelling, motor loss, cough, and cognitive impairment."[25] Johnson appealed, asserting that she was not diagnosed with scleroderma until after the Look-Back Period. As a result, she argued that the

---

[21] ECF 33, ¶ 4. Despite listing the January date on her claim form, Johnson asserts that her actual last day worked was at the beginning of April 2017. *Id.* Response to ¶ 7. This discrepancy is immaterial to the parties' respective motions.

[22] *Id.* ¶ 10.

[23] *Id.* ¶ 7.

[24] *Id.* ¶ 9.

[25] *Id.* ¶ 13.

Exclusion did not apply.[26] In response, Reliance Standard engaged an endocrinologist, Dr. Robert Cooper, to review Johnson's medical file.[27] Dr. Cooper concluded that Johnson had received various treatment during the Look-Back Period.[28] On July 18, 2018, Reliance Standard upheld the denial of Johnson's claim for benefits, concluding that her disability was "caused by, contributed to by, or the result of a pre-existing condition."[29]

## II.   Applicable Legal Standard

The procedural vehicle for resolving motions for judgment based on the administrative record is Federal Rule of Civil Procedure 52(a)(1), which states: "[i]n an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court." Presenting findings and conclusions in a written order "has been accepted as the preferable practice" by this Court. *Garlington v. Metro. Life Ins. Co.*, 2012 WL 7589403, at *5 (N.D. Ga. Dec. 31, 2012). In contrast, summary judgment is appropriate when "there is no genuine

---

[26]   *Id.* ¶ 27.

[27]   *Id.* ¶ 28.

[28]   *Id.* ¶¶ 29–31.

[29]   *Id.* ¶ 32.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). Because the parties largely agree on the facts and do not contest the accuracy of the administrative record, the difference between these two standards does not substantially affect the Court's analysis here.

### III. Discussion

In short, the parties disagree about whether Johnson's treatment for a variety of symptoms during the Look-Back Period—without a diagnosis of the cause of those symptoms—makes her claim for benefits subject to the Exclusion. The parties do not dispute that scleroderma is a Sickness (an illness or disease causing Total Disability). They ***do*** dispute whether it is a Sickness "***for which***" Johnson received medical Treatment, consultation, care, or services during the Look-Back Period. Johnson contends that she could not have received treatment *for* a disease no one knew she had. Rather, Johnson argues that she was only

treated for a litany of symptoms that are associated with numerous illnesses and diseases.[30]

In evaluating the denial of benefits under ERISA, this Court must apply the comprehensive framework developed by the Eleventh Circuit for reviewing an administrator's determination:

1. Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

2. If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

3. If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

4. If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

5. If there is no conflict, then end the inquiry and affirm the decision.

6. If there is a conflict, the conflict should merely be a factor for the court to take into account when

---

[30] ECF 26-1, at 10–16.

> determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011). Where an exclusion is at issue, the insurer bears the burden of establishing that the exclusion prevents coverage. *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998).

The parties have not argued steps one or two of this test. Accordingly, the Court begins with step three. *Ferrizzi v. Reliance Standard Life Ins. Co.*, 792 F. App'x 678, 684 (11th Cir. 2019) (per curiam) ("Because the parties have briefed only the arbitrary and capricious issues involving steps three through six, and because the magistrate judge and the district court addressed only those issues, we will also pretermit the *de novo* review of steps one and two and begin with the "arbitrary and capricious" standard of steps three through six, considering the structural conflict as a factor.").

### A.   Step Three: Was Reliance Standard's decision reasonable?

Since the analysis begins with step three, the Court assumes without deciding that Reliance Standard's decision to deny benefits to Johnson was *de novo* wrong.[31] When conducting a review of an ERISA benefits denial under the

---

[31] The Court is not convinced that any part of the *Blankenship* analysis beyond step one was required here. But the parties started their arguments with step three, so that is where the Court begins as well.

arbitrary and capricious standard, the Court's function is to determine "whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." *Graham v. Life Ins. Co. of N. Am.*, 222 F. Supp. 3d 1129, 1137–38 (N.D. Ga. 2016). The Court limits its review to whether the benefits determination "was made rationally and in good faith—not whether it was right." *Griffis v. Delta Family–Care Disability*, 723 F.2d 822, 825 (11th Cir. 1984).

Whether Johnson was entitled to benefits depends on the meaning of the Exclusion—a legal question. *Ferrizzi*, 792 F. App'x at 684 ("We first look to the plain and ordinary meaning of the policy terms to interpret the contract.") (quoting *Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan*, 833 F.3d 1299, 1307 (11th Cir. 2016)). Although it is an unreported decision, the Eleventh Circuit addressed the exact contract language at issue here in *Ferrizzi*. As Johnson now does, Ferrizzi argued that the pre-existing condition exclusion could not apply because he had not been diagnosed or treated for the disabling condition during the look-back period. The Court of Appeals squarely rejected this argument:

> [T]he policy's own definition of a "pre-existing condition" does not require a specific diagnosis or a specifically timed diagnosis of a condition for the exclusion to apply. Under the policy, if Ferrizzi received "treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs or medicines" for "any Sickness or Injury" that caused, contributed to, or resulted in his "total disability" from

> substance abuse/drug dependence, then the policy excludes coverage. The Reliance policy exclusion does not require a formal diagnosis during the lookback period, and Ferrizzi's arguments to the contrary are unpersuasive.

*Id.* at 685.

Applying standard contract interpretation rules, as the Court of Appeals did in *Ferrizzi*, leads this Court to the inescapable conclusion that Reliance Standard's benefits determination was supported by reasonable grounds. The Exclusion does not require that a diagnosis have been made for it to apply; it only required that Johnson have been treated or received consultation during the Look-Back Period for the Sickness that caused her total disability. Johnson plainly received treatment, consulted with physicians, and was prescribed medication for her ailments during the Look-Back Period.[32]

Johnson attempts to distinguish *Ferrizzi*, claiming that it does not address cases that held a pre-existing condition exclusion cannot apply to an undiagnosed condition.[33] Those cases, however, are from a smattering of other state and federal courts and are not persuasive in light of the unambiguous language of the

---

[32] The Court assumes without deciding that Reliance Standard bears the burden to show its application of the Exclusion was reasonable. *Compare* ECF 26-1, at 8–9 *and* ECF 35, at 1–2 *with* ECF 29, at 4–7. Reliance Standard has more than satisfied that standard.

[33] ECF 32, at 14.

Exclusion and the Eleventh Circuit's interpretation of the exact same exclusion language.³⁴

The primary case from the Eleventh Circuit on which Johnson relies, *Horneland v. United of Omaha Insurance Company*, is not as helpful to her position as she suggests. *Horneland* involved a pre-existing conditions exclusion with language very similar to the one here. But it defined "[s]ickness" more narrowly—as a "disease, disorder or condition, including pregnancy, for which you are under the care of a Physician." 717 F. App'x 846, 847 (11th Cir. 2017) (per curiam). (Here, "Sickness" is an illness or disease causing Total Disability.) Horneland's benefits claim was denied because the insurer concluded he was not disabled; but the insurer also determined that, even if he was disabled, the pre-existing exclusion applied because Horneland had been treated for "muscle spasms" and "back pain" during the look-back period.

The Court of Appeals noted that Horneland's symptoms were not "by themselves necessarily Pre-Existing Conditions under the Exclusion," or a "disease, disorder, or condition." *Id.* at 855. Further, the plan defined pain as a

---

34   ECF 32, at 11 (relying on *Ermenc v. American Family Mutual Ins. Co.*, 585 N.W.2d 679, 682 (Wis. 1998); *Hall v. Continental Cas. Co.*, 207 F. Supp. 2d 903, 912 (W.D. Wis. 2002); *McLeod v. Hartford*, 372 F.3d 618, 626 (3d Cir. 2004); *Ceccanecchio v. Continental Cas. Co.*, 50 F. App'x 66, 72 (3d Cir. 2002); *App v. Aetna Life Ins. Co.*, 2009 WL 2475020, at *8 (M.D. Pa. 2009)).

symptom, not a condition. *Id.* But the court also found that the underlying cause of Horneland's back pain and muscle spasms *could* trigger the pre-existing condition exclusion. *Id.* at 856. Factual disputes prevented resolution of that issue. The Court of Appeals therefore concluded that there were material disputes about the disability, the pre-existing condition, and whether the pre-existing condition caused the disability.

None of that is in dispute here. The parties agree that scleroderma rendered Johnson disabled. The problems for which she received medication and medical treatment during the Look-Back Period were all attributable to scleroderma—even though she had not yet been diagnosed with it. Moreover, the problems for which Johnson was treated during the Look-Back Period certainly fall within the definition of "illness," which makes them a Sickness under the Plan. Illness was not a term used in the policy at issue in *Horneland*. Johnson's characterization of that case as standing for the proposition that a person cannot receive treatment for a Sickness that has not yet been diagnosed does not accurately reflect the conclusions reached by the Court of Appeals. At a minimum, *Ferrizzi* and *Horneland* demonstrate that it was *not unreasonable* for Reliance Standard to conclude Johnson had been treated during the Look-Back Period for the Sickness that caused her Total Disability.

### B.     Steps Four and Five: Conflict of Interest

The parties agree that Reliance Standard operated under a structural conflict of interest.[35] Therefore, the Court proceeds to Step Six.

### C.     Step Six: Was Reliance Standard's decision arbitrary and capricious?

Johnson bears the ultimate burden of showing that the benefits denial was arbitrary and capricious. *Ferrizzi*, 792 F. App'x at 684 (where "there is a conflict of interest, 'the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest.'") (quoting *Doyle v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1352, 1360 (11th Cir. 2008)). In this effort Johnson points towards Reliance Standard's engagement of Dr. Cooper and argues in conclusory fashion that, since Dr. Cooper was an *endocrinologist*, and since scleroderma is a rare *rheumatological* condition that is difficult to diagnose, Dr. Cooper was not sufficiently qualified to render his opinion.[36]

But simply questioning Dr. Cooper's qualifications without evidence is unavailing. Johnson is the one who needed to establish that Dr. Cooper was not

---

[35]  ECF 27-1, at 11; ECF 38 (during oral argument, counsel for both sides agreed that Reliance Standard was conflicted).

[36]  ECF 26-1, at 18; ECF 35, at 14-15.

qualified to render his opinion. Her contention that Dr. Cooper's resumé does not "indicate familiarity with rare rheumatological disorders"[37] is not enough.

Finally, Johnson argues that Reliance Standard's decision was tainted by the conflict because the denial letters do not mention scleroderma.[38] Given the Exclusion's reliance on Treatment—rather than diagnosis—during the Look-Back Period, this is weak evidence at best that Reliance Standard "did not undertake a deliberate and principled reasoning process."

Even taking all of Johnson's arguments together, Reliance Standard's decision was neither arbitrary nor capricious when it was entirely consistent with an Eleventh Circuit case interpreting the exact same policy language. The Court empathizes with Johnson's situation. She suffers from a disabling and extremely painful terminal condition. But Johnson's genuine need for coverage cannot render meaningless the legal standards the Court must apply. Johnson has not demonstrated that Reliance Standard's decision to deny her benefits was arbitrary and capricious.

**IV.   Conclusion**

---

[37]   ECF 35, at 14.

[38]   *Id.*

Johnson's Motion for Judgment on the Administrative Record [ECF 26] is **DENIED** and Reliance Standard's Motion for Summary Judgment [ECF 27] is **GRANTED**. The Clerk is **DIRECTED** to render judgment in favor of Defendant Reliance Standard and close this case.

**SO ORDERED** this 29th day of September, 2023.

Steven D. Grimberg
United States District Court Judge